LAW OFFICE OF DANIEL MARKS
DANIEL MARKS, ESQ.
Nevada State Bar No. 002003
office@danielmarks.net
ADAM LEVINE, ESQ.
Nevada State Bar No. 004673
alevine@danielmarks.net
610 South Ninth Street
Las Vegas, Nevada 89101
(702) 386-0536: FAX (702) 386-6812
*Attorneys for Plaintiff Charles Moser*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| JOHN SABATINI, | Case No. 2:17-cv-01012-JAD-NJK |
| Plaintiff, | |
| v. | |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT | |
| Defendant. | |
| _____/ | |
| CHARLES MOSER | Case No. 2:17-cv-01704 |
| Plaintiff, | **CONSOLIDATED** |
| v. | |
| DEVIN BALLARD, an individual, PATRICK NEVILLE, an individual, and LAS VEGAS METROPOLITAN POLICE DEPARTMENT, | **PLAINTIFF CHARLES MOSER'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY** |
| Defendants. | |
| _____/ | |

///

///

1

1   **PLAINTIFF CHARLES MOSER'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY**

2

3   Plaintiff Charles Moser by and through undersigned counsel hereby moves the court for partial

4   summary judgment on the issue of liability under 42 U.S.C. §1983 for violation of his First

5   Amendment rights. The grounds for Plaintiff's Motion are set forth in the attached Memorandum of

6   Points and Authorities.

7   DATED this 26th day of June, 2018.

8   LAW OFFICE OF DANIEL MARKS

9   _/s/   Daniel Marks, Esq._____.
    DANIEL MARKS, ESQ.
10  Nevada State Bar No. 002003
    office@danielmarks.net
11  ADAM LEVINE, ESQ.
    Nevada State Bar No. 004673
12  alevine@danielmarks.net
    610 South Ninth Street
13  Las Vegas, Nevada 89101
    (702) 386-0536: FAX (702) 386-6812
14  *Attorneys for Plaintiff*

15  **MEMORANDUM OF POINTS AND AUTHORITIES**

16  **I.      STATEMENT OF FACTS**

17  After serving as a Navy SEAL sniper, Charles Moser began a career in law enforcement. After

18  working for the San Diego County Sheriff's Department, in 2000 he became employed with the Las

19  Vegas Metropolitan Police Department ("LVMPD"). In 2006 Moser joined LVMPD's SWAT team.

20  (Deposition of Charles Moser: Exhibit "1" at pp. 8-10).

21  On December 17, 2015 a LVMPD Police Officer was shot in the line of duty by an assailant at

22  the Emerald Suites on Las Vegas Boulevard which is approximately a block him to have to from where

23  ///

24  ///

2

1  Moser lived. A manhunt for the assailant ensued. The shooting and the search for the assailant were

2  news stories. (Deposition of Charles Moser: Exhibit "1" at pp. 13, 16, 23).[1]

3         In connection with the ongoing news story regarding the shooting and manhunt, a news article

4  on the subject was posted on Facebook. (Deposition of Charles Moser: Exhibit "1" at p. 17).

5  Ultimately, the assailant was capture by LVMPD's Repeat Offenders Project ("ROP") team. Detective

6  Jess Kegly was a good friend of Moser's and had served on LVMPD's SWAT team before transferring

7  to ROP. Kegly had given himself the nickname "Former Action Guy" or "FAG" to make a joke of the

8  fact that he had transferred out of SWAT. (Deposition of Charles Moser: Exhibit "1" at pp. 14-17, 45).

9         After seeing an article on Fox Channel 5 that the assailant had been captured by ROP shift,

10  Moser, who was at home off-duty and acting in his capacity as a private citizen, posted on the

11  Facebook page containing an article the shooting and manhunt:

12       Thanks to a Former Action Guy (FAG) and his team we caught that asshole… It's a
     shame he did have a few holes in him…

13

14  (Deposition of Charles Moser: Exhibit "1" at pp. 13, 16-17; See Facebook post at Exhibit "2").

15         An anonymous complaint was filed with LVMPD Internal Affairs. Moser was sustained for a

16  violation of LVMPD Regulation 4/103.27 Social Media/Networking & Electronic Communications

17  (hereafter "Social Media policy"). Under LVMPD Regulation 5/101.26 "Maintenance of Values and

18  Ethics" it is the employee's Bureau Area Commander (a captain), who was responsible for determining

19  the level of discipline to be received by an employee after consulting with Labor Relations and the

20  Division Commander (deputy chief). If there is a difference of opinion between Labor Relations and

21  the Bureau Area Commander, it is the decision of the Division Commander which governs. (See

22  ///

23

---

24  [1] On page 13 of his deposition Moser incorrectly identifies the year as 2016. On page 23 he corrects that the shooting occurred in 2015.

Regulation 4/103.27 Exhibit "2"; Deposition of Jamie Frost: Exhibit "3" at pp. 7-10; Deposition of Devin Ballard: Exhibit "4" at pp. 6, 10; Deposition of Patrick Neville: Exhibit "5" at pp. 12-13).

Captain Devin Ballard, after consulting with Labor Relations and Deputy Chief Patrick Neville, determined that Moser should be punished with a disciplinary transfer. (Deposition of Devin Ballard: Exhibit "4" at pp 9-10; Deposition of Patrick Neville: Exhibit "5" at p. 13). Moser was given and Adjudication of Complaint ("AOC") signed by Captain Ballard and Deputy Chief Neville which stated:

> On December 29, 2015, a complaint was filed against you regarding an allegation of misconduct. Internal Affairs conducted an investigation and determined that you violated LVMPD Reg. 4/103.27 Social Media/Networking & Electronic Communications.

> Specifically, an anonymous complaint was received by Internal Affairs that reported a person who was a police officer for the LVMPD posted an unprofessional comment on Facebook. A screen shot of the post was provided and showed an undated comment from "Charles Moser" which read "Thanks to a Former Action Guide (FAG) and his team we caught that asshole... It's a shame he didn't have a few holes in him". You admitted to posting this comment in reference to an officer involved shooting where a LVMPD officer was shot in the line of duty on December 17, 2015 and the subject was later apprehended by detectives and taken into custody. In addition, information listed on your Facebook page allowed users of the site to identify you as a law enforcement officer and an LVMPD sniper – which would have been the subject of recent news stories in LVMPD officer involved shootings because of your role as a sniper. Your comments on a social media site regarding the use of deadly force was inappropriate and would tend to negatively affect the public's perception of the Department as such, you violated LVMPD Regulation 4/103.27 Social Media/Networking & Electronic Communications.

> Your comment would also tend to negatively impact the Department's ability to serve the public, would impede the performance of your duties and SWAT, and thus, has made you ineffective in your current assignment. Your actions warrant removal from this assignment and you will be transferred to Patrol. In accordance with the disciplinary transfer guidelines, you may not transfer back to SWAT from minimum of one year from the transfer date.

The AOC was written by LVMPD's Department of Labor Relations and not Defendants Ballard or Neville. (See Adjudication of Complaint Exhibit "2"; Deposition of Jamie Frost: Exhibit "3" at pp. 6-7; Deposition of Devin Ballard: Exhibit "4" at p. 11; Deposition of Patrick Neville: Exhibit "5" at p. 18).

///

4

1    Moser grieved his disciplinary transfer to a Labor Management Board ("LMB") as provided for

2    in the collective bargaining agreement governing his employment. The LMB consists of an arbitrator

3    from a rotating panel, a randomly selected officer from the rank of lieutenant, a randomly selected

4    officer from the rank of Chief or Captain, a randomly selected person from the Police Protective

5    Association Bd., and a randomly selected person from the PPA general membership. (Deposition of

6    Jamie Frost: Exhibit "3" at pp. 52-53). LVMPD's Director of Labor Relations Jamie Frost represented

7    the Department and argued to the LMB that the grievance should be denied because SWAT Officers

8    should be held to a "higher standard". (Deposition of Jamie Frost: Exhibit "3" at pp. 34-35). The

9    grievance was denied with a majority of the LMB agreeing with the Department. (Exhibit "2"). The

10   issue of the First Amendment was not addressed by the LMB. (Deposition of Charles Moser: Exhibit

11   "1" at p. 33).[2]

12   **II.      SUMMARY JUDGMENT STANDARD**

13   Summary judgment is appropriate when, viewing the facts in the light most favorable to the

14   nonmoving party, there is no genuine issue of material fact that would preclude summary judgment as a

15   matter of law. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996); Fed.R.Civ.P. 56(c).

16   The moving party bears the burden of proving there is no genuine issue of material fact, through

17   the use of authenticated evidence, to show that they are entitled to judgment as a matter of law. *Celotex*

18   *Corp. v. Catrett*, 477 U.S. 317, 323 (1986); see *Orr v. Bank of America*, 285 F.3d 764 (9th Cir.2002).

19   The burden then shifts to the nonmoving party, to survive summary judgment, to establish that there are

20   specific material facts in dispute through use of authenticated evidence. *Matsushita Elec. Indus. Co. v.*

21   *Zenith Radio Corp.*, 475 U.S. 574, 588 (1986); *see Orr*, 285 F.3d at 773.

22

23

24
_____
[2] Even if the LMB had addressed First Amendment issues, decisions of arbitral forums arising out of collective bargaining agreements are not entitled to preclusive effect as arbitrators may not "have the expertise required to resolve the complex legal questions that arise in § 1983 actions". *McDonald v. City of West Branch, Mich.*, 466 U.S. 284 104 S.Ct. 1799 (1984).

5

**III. DEFENDANTS NEVILLE AND BALLARD VIOLATED MOSER'S FIRST AMENDMENT RIGHTS BY GIVING HIM A DISCIPLINARY TRANSFER FOR SPEECH MOSER MADE AS A CITIZEN ON A MATTER OF PUBLIC CONCERN.**

It is well-established that public employees do not surrender their First Amendment rights by virtue of having accepted employment by a state actor. *Connick v. Myers*, 461 U.S. 138, 103 S. Ct. 1684 (1983); *Pickering v. Board of Education*, 391 U.S. 536, 88 S. Ct. 1731 (1968). As noted by the Supreme Court in *Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951 (2006):

> The Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern.

547 U.S. at 417, 126 S. Ct. at 1957 citing *Pickering*, *Connick*, and *Rankin v. McPherson*, 483 U.S. 378, 107 S. Ct. 2891 (1987). As stated by the Ninth Circuit "It is well settled that the state may not abuse its position as employer to stifle 'the First Amendment rights [its employees] would otherwise enjoy as citizens to comment on matters of public interest." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1066 (9th Cir. 2013).

The elements of a claim of First Amendment retaliation are:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Dhalia v. Rodriguez*, 735 F.3d at 1067 citing *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).

It should be noted that from a First Amendment perspective, this case is indistinguishable from *Rankin v. McPherson*, 483 U.S. 378, 107 S. Ct. 2891 (1987). In that case, Ardith McPherson was a deputy in the Office of the Constable of Harris County, Texas. While at work she heard over on the radio that there had been an attempt to assassinate President Ronald Reagan. After learning that Reagan

6

1   had survived the attempt, McPherson made the comment "shoot, if they go for him again, I hope they

2   get him". 483 U.S. at 381, 107 S. Ct. at 2895.

3          McPherson's statements were overheard and reported to Constable Walter H. Rankin who, after

4   questioning McPherson about the comment, terminated her. After the District Court held that her

5   statements were not protected speech, the United States Court of Appeals for the Fifth Circuit reversed

6   noting "However ill considered Ardith McPherson's opinion was" it was still protected speech, and

7   remanded the case for determination of an appropriate remedy. 483 U.S. at 383, 107 S. Ct. at 2896.

8          The Supreme Court affirmed the decision of the Fifth Circuit reemphasizing that "Vigilance is

9   necessary to ensure that public employers do not use authority over employees to silence discourse, not

10   because it hampers public functions but simply because superiors disagreed with the content of the

11   employee's speech". *Id*. at 384, 2897.

12          In this case, Defendants do not dispute that Moser's Facebook post was made off duty and in his

13   capacity as a private citizen. (Deposition of Devin Ballard: Exhibit "4" p. 11; Deposition of Patrick

14   Neville: Exhibit "5" at pp. 13-14).[3]

15          Speech deals with matters of public concern when it can "be fairly considered as relating to any

16   matter of political, social, or other concern to the community," or when it "is a subject of legitimate

17   news interest; that is, a subject of general interest and of value and concern to the public."  *Snyder v.*

18   *Phelps*, 562 U.S. 443, 453, 131 S. Ct. 1207, 1216 (2011) citing *Connick*, supra and *San Diego v. Roe*,

19   543 U.S. 77, 83, 125 S.Ct. 521, 160 L.Ed.2d 410 (2004). Likewise, the Defendants do not dispute that

20   Moser's Facebook post regarding the apprehension of a suspect wanted for the shooting of a police

21   officer was a news story and on a matter of public concern. (Deposition of Devin Ballard: Exhibit "4"

22   at pp. 11-12; Deposition of Patrick Neville: Exhibit "5" at p. 14).

23

24   _____

[3] Even speech made on duty at the workplace may still be in the capacity of a private citizen. See *Rankin v. McPherson*, supra (expressing enthusiasm for the assassination attempt on President Reagan at work).

Defendants will likely point out that Moser admitted in a compelled interview before Internal Affairs that his statement was "inappropriate". However it is equally well established that the "inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern". *Snyder v. Phillips*, 462 U.S. at 453, 131 S. Ct. at 1216; *Rankin v. McPherson*, 483 U.S. at 387, 107 S. Ct. at 2891. Or as phrased more bluntly by the late Justice Antolin Scalia "disgust is not a valid basis for restricting expression". *Brown v. Education Merchants Association*, 564 U.S. 786, 798, 131 S.Ct. 2729, 2738 (2011).

Likewise, there is no dispute that Moser's speech was the motivating factor for his discipline, and LVMPD does not claim it would have taken the adverse employment action in the absence of his speech. He was served with an Adjudication of Complaint prepared by Labor Relations and signed off on by both individual Defendants which clearly states that he was given a transfer because of his speech. (See Adjudication of Complaint at Exhibit "2").

Having established that the speech at issue was made in the capacity as a private citizen on a matter of public concern, and the motivating factor for his discipline, this leaves only "whether LVMPD had an adequate justification for treating the employee differently from other members of the general public" which is to be evaluated under the *Pickering* balancing test. In order to avoid liability the Defendants must demonstrate:

> [T]he speech so severely damaged office harmony and working relationships that the government's interest in promoting an effective works place outweighs the employee's First Amendment rights" *Hyland v. Wonder*, 972 F.2d at 1139. The employer bears the burden of proving that the balance of interests weighs in its favor. *Id.* "The more tightly the Amendment embraces the speech the more vigorous a showing of disruption must be made."

*Johnson v. Multnomah County*, 48 F.3d at 420, 426 (1985).

In *Robinson v. York,* 566 F.3d 817 (9th Cir. 2009) the Ninth Circuit reiterated that defendants must "demonstrate actual, material and substantial disruption" or "reasonable predictions of disruption

1  in the workplace". 566 F.3d at 824. The Ninth Circuit emphasized "[E]ven in a police department, the

2  complained-of disruption must be 'real, [and] not imagined'" and the "disruption exception cannot

3  'serve as a pretext for stifling legitimate speech or penalizing public employees for expressing

4  unpopular views.'" *Id.* citing *Allen v. Scribner*, 812 F.2d 426, 432 (9th Cir.1987).

5         Defendants cannot meet their burden under the *Pickering* balancing test. Deputy Chief Patrick

6  Neville admitted at his deposition that there was no disruption caused by Moser's speech:

7         Q:      Were you able to specifically yourself identify any actual disruption to the
                  department's operations as a result of the social media post?

8
        A:       No.
9

10 (Deposition of Patrick Neville: Exhibit "5" at p. 18). This was confirmed by Captain Ballard:

11        Q:      Would you agree with me that the social media post by – the social media post
                  made by Charles Moser which lead to discipline did not cause any type of
12                disruption in the Department or to its operations?

13        A:      Can you be more specific to "disruption"?

14        Q:      Interfered with LVMPD's ability to carry out any given operation causing
                  arguments in the workplace?
15
        A:       I think it could have.
16
        Q:      No, I'm asking you did it? Were you aware – –
17
        A:      Not that I'm aware of.
18

19 (Deposition of Devin Ballard: Exhibit "4" at p. 15).[4] Captain Ballard further confirmed that,

20 notwithstanding the language in the Adjudication of Complaint drafted by Labor Relations, nothing

21 about Moser's Facebook post interfered with his ability to perform as a SWAT Officer. (Deposition of

22 Devin Ballard: Exhibit "4" at p. 17-18).

23 _____

24 [4] Defendant Ballard's initial "could have" answer is exactly the type of speculative or "imagined" disruption rejected by the
Ninth Circuit in *Robinson v. York*, supra and *Allen v. Scribner*, supra.

9

1    Instead, the Defendants' deposition testimony conclusively established that the reason Moser

2    was transferred was because the Defendants sought to impose upon Moser their own value judgments

3    that SWAT officers should be held to some mythical "higher standard". Deputy Chief Neville stated

4    "So the thought process of the time was now I have an individual who doesn't have a problem with,

5    you know, saying that individuals should be shot or killed as a SWAT sniper. (Deposition of Patrick

6    Neville: Exhibit "5" at p. 22). Labor Relations Director Jamie Frost echoed this sentiment claiming that

7    Moser had become "callous" to killing and that based upon his comment that he might not take

8    shooting somebody "seriously anymore". (Deposition of Jamie Frost: Exhibit "3" at pp. 25, 33-34).

9    Ballard claimed that Moser's comment about a shooting seemed "matter-of-factly". (Deposition of

10   Devin Ballard: Exhibit "4" at p. 16).[5] The discipline was only for the comments about the shooting and

11   not the use of the anachronism for Former Action Guy (FAG) as Captain Ballard knew he was referring

12   to former SWAT Officer Jess Kegly. (See Adjudication of Complaint at Exhibit "2"; Deposition of

13   Devin Ballard: Exhibit "4" at p. 14).

14   As Justice Kennedy just reiterated this very month "it is not, as the court has repeatedly held,

15   the role of the State or its officials to prescribe what shall be offensive." *Masterpiece Cakeshop, Ltd. v.*

16   *Colorado Civil Rights Commission*, ___S. Ct. ___, 2018 Westlaw 2465172 (June 4, 2018) citing *Matal*

17   *v. Tam*, 582 U.S. ___, 137 S. Ct. 1744 (2017). "No official, high or petty, can prescribe what shall be

18   orthodox in politics, nationalism, religion, or other matters of opinion," *West Virginia Bd. of Ed. v.*

19   *Barnette*, 319 U.S. 624, 642, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). While the Defendants may not

20   personally like what they believed Moser was stating, in the absence of actual disruption to LVMPD,

21   ///

22

23   [5] The Defendants actually misunderstood Moser's comment. The statement that it was "too bad" that the assailant did not
     have "holes in him" was a reference to the fact that the Officer who was shot did not get off any defensive shots in

24   connection with his being ambushed. (Deposition of Charles Moser: Exhibit "1" at pp. 46-47).  However, for purposes of the
     First Amendment the Defendant's misunderstanding is irrelevant.

1  which they have conceded did not occur, the issuance of discipline for Moser's speech as a private

2  citizen on a matter of public concern violated the First Amendment.

3  **IV.   *MONELL* LIABILITY OF LVMPD**

4      There is no *respondeat superior* liability under 42 U.S.C. §1983. However, liability may be

5  imposed upon a municipality or other political subdivision where the constitutional deprivation is a

6  result of an unconstitutional custom, policy or practice. *Monell v. Department of Social Services*, 436

7  U.S. 658, 98 S.Ct. 2018 (1978). Such liability may be imposed (1) where there is an express policy,

8  such as an ordinance, regulation or policy statement; (2) a widespread practice that, although not

9  authorized by written law or express municipal policy, it is "so permanent and well settled as to

10 constitute custom or usage with the force of law"; or (3) the decision of the person with "final

11 policymaking authority." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 127, 108 S. Ct. 915, 924

12 926 (1988). Likewise, "acquiescence in a long-standing practice or custom which constitutes the

13 'standard operating procedure' of the local government entity" is sufficient to impose liability. *Jett v.*

14 *Dallas Independent School Dist.*, 491 U.S. 701, 737, 109 S. Ct. 2702, 2724 (1989) citing *Pembaur v.*

15 *City of Cincinnati*, 475 U.S. 469, 106 S. Ct. 1292 (1986).

16      Deliberate indifferent training, or a conscious choice not to train, with regard to constitutional

17 requirements may also give rise to municipal liability. *City of Canton v. Harris*, 489 U.S. 378, 380; 109

18 S.Ct. 1197, 1200 (1989). A deliberate indifferent failure to adopt policies necessary to prevent

19 constitutional violations will support liability. *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1982)

20 ("[T]he decision not to take any action to alleviate the problem of detecting missing arrangements

21 constitutes a policy for purposes of § 1983 municipal liability"). As noted by the Ninth Circuit in

22 *Velasquez v. City of Long Beach*, 793 F.3d 1010, 1027 (9th Cir. 2015) "A custom or practice can be

23 inferred from evidence of repeated constitutional violations for which the errant municipal officers

24 were not discharged or reprimanded" citing *Hunter v. City of Sacramento*, 652 F.3d 1225, 1232-33 (9th

Cir. 2011). As recently noted by this District, *Monell* liability may be established where the action is made "pursuant to governmental custom even though such a custom has not received formal approval through the body's official decision-making channels" or by a "policy of inaction" which is "based on a government body's failure to implement procedural safeguards to prevent constitutional violations." *Ritter v. Marshowski*, 2016 WL 8735667 (D.Nev. 2016).

Even a single decision of an individual with policymaking authority is sufficient to impose municipal liability. As stated by the United States Supreme Court in *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S. Ct. 1292 (1986):

> [I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. No one has ever doubted, for instance, that a municipality may be liable under §1983 for a single decision by its properly constituted legislative body—whether or not that body had taken similar action in the past or intended to do so in the future—because even a single decision by such a body unquestionably constitutes an act of official government policy. See, e.g., *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (City Council passed resolution firing plaintiff without a pretermination hearing); *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (City Council canceled license permitting concert because of dispute over content of performance). But the power to establish policy is no more the exclusive province of the legislature at the local level than at the state or national level. *Monell's* language makes clear that it expressly envisioned other officials "whose acts or edicts may fairly be said to represent official policy," *Monell*, supra, 436 U.S., at 694, 98 S.Ct, at 2037–2038, and whose decisions therefore may give rise to municipal liability under § 1983.

475 U.S. at 480, 106 S. Ct. at 1298-1299. Where a government's authorized decision maker adopts a particular course of action, "the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Pembaur*, 475 U.S. at 481, 106 S. Ct. at 1299 (1986).

Final policy making authority at LVMPD is vested with the Sheriff. (Deposition of Jamie Frost: Exhibit "3" at p. 13). By policy, the Sheriff has delegated final disciplinary authority involving matters of a 40 hour suspension or less to the Bureau Area Commanders and Division Commanders. (See LVMPD Regulation 5/101.26 Exhibit "2"; Deposition of Patrick Neville: Exhibit "5" at pp. 12-13). It is undisputed that a disciplinary transfer of the type receipt by Moser is considered by LVMPD to be less

than a 40 hour suspension. (Deposition of Patrick Neville: Exhibit "5" at p. 13). Accordingly, the decisions of Defendants Neville and Ballard constitute decisions by the highest level decision makers sufficient to impose liability on LVMPD.

Liability for LVMPD is further appropriate because LVMPD itself ratified the decision. Municipal liability may be established "when the officials involved adopted in expressly approved of the acts of others who caused the constitutional violation". *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996).

LVMPD Director of Labor Relations Jamie Frost represented LVMPD at the LMB. At that LMB Ross on behalf of the Department asserted that the discipline should be upheld because SWAT officers should be held to a "higher standard". (Deposition of Jamie Frost: Exhibit "3" at p. 4-15, 33-34). Because LVMPD through its Labor Relations Department ratified the actions of Neville and Ballard, LVMPD is likewise liable for the unconstitutional deprivation.

Finally, *Monell* liability is be appropriate due to the complete lack of training provided by LVMPD to its supervisors with regard to when supervisors can and cannot discipline for protected First Amendment speech. At the time Moser was disciplined, Defendant Neville has been a supervisor for over 20 years and Defendant Ballard has been a supervisor for 19 years. Both testified that they had never received any type of training at LVMPD as to when they could or could not discipline an employee for speaking as a private citizen on a matter of public concern. (Deposition of Patrick Neville: Exhibit "5" at pp. 6-17; Deposition of Devin Ballard: Exhibit "4" at p. 13).

LVMPD has a long-standing practice of disciplining officers who posted on social media in violation of the Department's social media policy. (See list of other cases maintained by LVMPD Exhibit "2"; Deposition of Jamie Frost: Exhibit "3" at pp. 19-23). Failing to train supervisors as to when discipline is and is not permissible under the First Amendment constitutes a "policy of inaction"

///

13

1  which is "based on a government body's failure to implement procedural safeguards to prevent

2  constitutional violations." *Ritter v. Marshowski*, 2016 WL 8735667 (D.Nev. 2016).

3  **V.      LVMPD'S SOCIAL MEDIA POLICY ITSELF IS UNCONSTITUTIONAL.**

4          Charles Moser's action was consolidated with the action brought by Officer John Sabatini for

5  purposes of both discovery and for motions for summary judgment. Moser joins in the Points and

6  Authorities filed by Plaintiff Sabatini regarding the unconstitutionality of LVMPD Reg. 4/103.27

7  "Social Media/Networking & Electronic Communications" and incorporates them herein by reference.

8  **VI.     CONCLUSION**

9          Based upon the undisputed facts, no reasonable juror could conclude that Charles Moser was

10 not deprived of his First Amendment Rights by the individual Defendants acting under color of State

11 law, or that the deprivation should not be attributed to LVMPD itself pursuant to both official policy

12 and express ratification.

13         For all of the reasons set forth above, the court could enter summary judgment on the issue of

14 liability in favor of Plaintiff Charles Moser with the only remaining issue left for trial being the amount

15 of damages to award.

16         DATED this 26th day of June, 2018.

17                                          LAW OFFICE OF DANIEL MARKS

18                                            */s/   Daniel Marks, Esq.                 .*
                                            DANIEL MARKS, ESQ.
19                                          Nevada State Bar No. 002003
                                            office@danielmarks.net
20                                          ADAM LEVINE, ESQ.
                                            Nevada State Bar No. 004673
21                                          alevine@danielmarks.net
                                            610 South Ninth Street
22                                          Las Vegas, Nevada 89101
                                            (702) 386-0536: FAX (702) 386-6812
23                                          *Attorneys for Plaintiff*

24

## CERTIFICATE OF SERVICE BY ELECTRONIC MEANS

I hereby certify that I am an employee of the Law Office of Daniel Marks and that on the 26th day of June, 2018, I did file and serve the above and forgoing PLAINTIFF CHARLES MOSER'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY, by way of Notice of Electronic Filing provided by the court mandated ECF filing service, at the following:

Marc J. Randazza, Esq.
Alex J. Shepard, Esq.
RANDAZZA LEGAL GROUP
Email: ecf@randazza.com
*Attorneys for Plaintiff John Sabatini*

Nicholas D. Crosby, Esq.
MARQUIS AURBACH COFFING
Email: ncrosby@maclaw.com
*Attorney for Defendants*


   /s/ GLENDA GUO, Paralegal   .
An employee of the
LAW OFFICE OF DANIEL MARKS