# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| John Sabatini,<br><br>    Plaintiff<br><br>v.<br><br>Las Vegas Metropolitan Police Department,<br><br>    Defendant | Case No.: 2:17-cv-01012-JAD-NJK |
| Charles Moser,<br><br>    Plaintiff<br><br>v.<br><br>Devin Ballard, Patrick Neville, Las Vegas Metropolitan Police Department<br><br>    Defendants | **Order Denying Plaintiff's Motion for Reconsideration and Entering Judgment**<br><br>[ECF No. 58] |

Charles Moser, a former SWAT team sniper, sues the Las Vegas Metropolitan Police Department and two of his former supervising officers (collectively Metro). He alleges that the defendants violated his First Amendment rights by transferring him out of SWAT because he commented on a Facebook post that it was "a shame" that a suspect apprehended after shooting a police officer "didn't have a few holes in him."[1] After analyzing Moser's First Amendment retaliation claim under the five-step, public-employee framework stemming from *Pickering v.*

---

[1] ECF No. 38-2 at 26 (ellipses omitted).

*Board of Education*,[2] I granted summary judgment in the defendants' favor.[3]  Because Metro didn't challenge whether Moser's Facebook post touched on a matter of public concern, the only step at issue was the *Pickering* balance: whether Metro's "legitimate administrative interests" as a public employer "outweigh[ed] [Moser's] First Amendment rights."[4]  I ultimately held that Metro's interest in maintaining the public's trust in the police—especially in SWAT snipers who are specifically placed in the position to take a suspect's life when necessary—outweighed Moser's interest in his statement.

Moser now moves for reconsideration.  He primarily argues that I overlooked that he disputes the Metro Internal Affairs Bureau's (IAB) determination that the content on his Facebook profile would have allowed readers to discern that he was a police officer.[5]  But Moser's original affidavit merely highlighted the lack of evidence supporting the IAB's finding and did not squarely dispute it.  And though his new affidavit clarifies his position, I find that the dispute is not material because, even if I disregard this fact, the *Pickering* balance still tilts in Metro's favor.

---

[2] *Pickering v. Board of Education*, 391 U.S. 563 (1968); *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009) ("Unraveling *Pickering*'s tangled history reveals a sequential five-step series of questions . . . .").

[3] ECF No. 56; *Sabatini v. Las Vegas Metro. Police Dep't*, 369 F. Supp. 3d 1066, 1093 (D. Nev. 2019).

[4] *Eng*, 552 F.3d at 1071 (quoting *Thomas v. City of Beaverton*, 379 F.3d 802, 808 (9th Cir. 2004)).

[5] *Sabatini*, 369 F. Supp. 3d at 1093.

**Standard of review**

A district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient," so long as it has jurisdiction.[6] "[M]otions for reconsideration are disfavored," and "[a] movant must not repeat arguments already presented . . . ."[7] "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law."[8]

**Discussion**

At the *Pickering* balancing stage, I found that Metro "has a strong interest in prohibiting its officers from making the type of statement Moser posted on Facebook."[9] Our society trusts that the officers will use deadly force only when necessary to protect themselves and others, and that concern is heightened for SWAT snipers, who "are the only officers in the department specifically 'set up in a tactical situation and if necessary given a green light to kill someone.'"[10] So, even if Moser didn't sincerely wish that his fellow officers shot the suspect "regardless of whether the use of deadly force (or any force) was necessary," his "cavalier and callous comment conveyed a lack of awareness for the degree for trust placed in SWAT officers."[11] And although Moser's post hadn't caused any disruptions within the department, it was reasonable for Metro to

---

[6] *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (quotation and emphasis omitted).

[7] LR 59-1(b).

[8] *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

[9] *Sabatini*, 369 F. Supp. 3d at 1092.

[10] *Id*. (quoting ECF No. 44-1 at 7 (Deputy Chief Neville's deposition)).

[11] *Id*. at 1092–93.

predict that his statement, "if discovered by the public, would harm the community's trust in its police department."[12]

I also found that other factors weighed in Metro's favor. Namely, Moser spoke in a public setting by commenting on a third-party's Facebook post.[13] "[A]nd the IAB investigator determined that the content on his Facebook profile—which could be accessed by simply clicking on his name above the post—would have allowed readers to discern that he was a Metro officer."[14] Although Moser did not appear to dispute this conclusion, he argued that the underlying evidence—the investigator's conclusion in the IAB report—was inadmissible as "unattributed hearsay.[15]" But I concluded that, because the IAB investigator could have been called to the stand to testify about the findings stated in his report, the evidence's *substance* could have be presented in an admissible form at trial.[16] It was also undisputed that, near the time of Moser's post, local news articles had named Moser as a SWAT sniper who had shot a suspect, which I found would have increased the likelihood of anyone who read his post discerning his role in Metro.[17] Finally, one of Moser's supervising officer's expressed concern that the post would have exposed Metro to additional scrutiny and potential legal liability if Moser was forced to shoot a suspect in a future confrontation.[18]

---

[12] *Id*. at 1093.

[13] *Id*.

[14] *Id*.

[15] *Id*. n.185

[16] *Id*. ("[T]he 2010 amendment to Federal Rule of Civil Procedure 56 'eliminate[d] the unequivocal requirement' that evidence must be admissible in its present *form* in order to be considered at summary judgment." (quoting *Romero v. Nev. Dep't of Corr.*, 673 F. App'x 641, 644 (9th Cir. 2016))).

[17] *Id*. at 1093–94.

[18] *Id*. at 1094.

When I weighed all of these legitimate concerns against Moser's interest in his speech, I found the *Pickering* balance tilted in Metro's favor. I therefore granted Metro and denied Moser summary judgment on his retaliation claim.

In moving for reconsideration, Moser argues that I overlooked the portion of his affidavit in which he disputes the IAB report's conclusion regarding Moser's profession being discernable from his Facebook profile.[19] He asserts that the profile did not reveal that he was a Metro officer or SWAT sniper and that this case is therefore analogous to the Supreme Court's decision in *Rankin v. McPherson*,[20] the case he principally relied on in his summary-judgment briefing that I concluded was distinguishable.[21] Metro counters that Moser's affidavit, rather than squarely disputing the investigator's conclusion, merely states that "no . . . evidence was ever produced in connection with the IAB investigation."[22] I therefore construed and continue to construe this statement as challenging the admissibility of the IAB report rather than disputing the report's relevant conclusion. Moser has, however, included a new affidavit with his reply brief, averring that his Facebook profile did not reveal that he was a Metro officer.[23]

But even if I disregard the IAB report's conclusion, I find that the *Pickering* balance still weighs in Metro's favor. This now-disputed fact was merely one factor that made it more likely for anyone who read the post to discover that Moser was a Metro officer and thus increased the likelihood that his statement would harm the public's trust in its police department. But Moser's

---

[19] ECF No. 58 at 2–3.

[20] *Rankin v. McPherson*, 483 U.S. 378 (1987).

[21] *Sabatini*, 369 F. Supp. 3d at 1093 n.184.

[22] ECF No. 47-1 at 2 ¶ 4; *see also id*. ¶ 6 ("When the entire file was produced, it was devoid of any screen shots, phots, or other evidence to support the claim that my personal Facebook page contained personal information identifying me as in [sic] LVMPD officer and sniper.").

[23] ECF No. 63-1 at 2 ¶ 2.

5

position as a SWAT sniper was still readily discoverable because it remains undisputed that local news articles discussed his role in shooting a suspect not long before he made the statement on Facebook. And because Moser posted his comment in response to a third party's Facebook post—as opposed to on a personal profile with privacy restrictions—he spoke in a public setting.

This case thus remains materially distinguishable from *Rankin*. There, a sheriff's office terminated an employee who, upon hearing news that President Ronald Reagan had been shot, stated: "[H]e's cutting back medicaid and food stamps. . . . [I]f they go for him again, I hope they get him."[24] Finding that the Sheriff's office's interests didn't outweigh the employee's interest in her speech, the Supreme Court emphasized that was no "danger that [she] had discredited the office by making her statement in public."[25] The employee's "speech took place in an area to which there was ordinarily no public access; her remark was evidently made in a private conversation with another employee"; no "member of the general public was present or heard [her] statement"; and there [wasn't] any evidence that employees other than [the one] who worked in the room even heard the remark."[26] And not only had the remark not caused actual disruptions in the office, but the evidence showed that the employee's termination "was not based on any assessment by the Constable that the remark demonstrated a character trait that made respondent unfit to perform her work."[27]

Moser emphasizes, as he did in prior briefing, that his supervisors conceded that his Facebook post caused no actual disruption in his unit or the department. But a public employer's interest in terminating an employee may be based on "reasonable predictions" of workplace

---

[24] *Rankin*, 483 U.S. at 381.
[25] *Id*. at 389.
[26] *Id*.
[27] *Id*. & n.15.

6

disruptions[28] and such predictions are "entitled to substantial weight."[29]  Indeed, the employer need "not 'allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action.'"[30]  It was reasonable here for Metro to predict that Moser's statement, if discovered by the public and if left unchecked by his supervisors, would erode public trust in the department and its SWAT unit.  One of his supervisors also expressed concern that the public would more extensively scrutinize any future use of deadly force by Moser and increase the likelihood that both he and Metro would be sued.  And, unlike the employee in *Rankin*, the evidence here establishes that Moser's comment led his superiors to question his judgment and therefore fitness to serve as a SWAT sniper.

So, regardless of whether Moser identified himself as a Metro officer on his Facebook page, I still find that Metro's interests outweighed his interest in his speech.  Moser's remaining arguments either recycle points he raised in his summary-judgment briefing or merely challenge the weight I assigned to Metro's interests and thus aren't valid grounds for reconsideration.  I therefore deny his motion.  And because Moser's co-plaintiff, who had state-law claims pending, recently stipulated to dismiss all of his remaining claims against Metro,[31] there are no matters left to adjudicate in this case.  So, I enter judgment in favor of Metro and against Moser.

## Conclusion

Accordingly, IT IS HEREBY ORDERED that Charles Moser's **motion for reconsideration [ECF No. 58] is DENIED**.

---

[28] *Robinson v. York*, 566 F.3d 817, 824 (9th Cir. 2009).

[29] *Tindle v. Caudell*, 56 F.3d 966, 972 (8th Cir. 1995).

[30] *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 152 (1983)).

[31] ECF No. 62.

IT IS FURTHER ORDERED that the Clerk of Court is directed to **ENTER JUDGMENT** in favor of Devin Ballard, Patrick Neville, and the Las Vegas Metropolitan Police Department and against Charles Moser, and **CLOSE THIS CASE**.

Dated: July 23, 2019

                                                            _____
                                                          U.S. District Judge Jennifer A. Dorsey